UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS ARTHUR JOHNSON,<br><br>Defendant. | No. 11-CR-00429-JAM<br><br>**ORDER GRANTING DEFENDANT JOHNSON'S MOTION TO DISMISS** |

This matter comes before the Court on Defendant Douglas Arthur Johnson's Motion to Dismiss (Doc. #78) the superseding indictment (Doc. #64). For the reasons discussed below, the Court grants Defendant Johnson's Motion and dismisses the indictment against Defendant Johnson.

I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Johnson was an employee of WECO and worked at the Lincoln facility. He was one of several managers of that branch and worked in the "Converter shop." The investigation of WECO began sometime in early 2007, to determine whether there were violations of the Federal Aviation Administration ("FAA") regulations in the repair and overhaul of airplane parts at

1

WECO's facilities. This investigation culminated in Defendant Johnson being subpoenaed to testify before the Grand Jury on March 4, 2010, and an original indictment being filed against him and other co-defendants on September 29, 2011. During this time, the case was being prosecuted by Assistant United States Attorney ("AUSA") Sean Flynn. However, in July 2010, AUSA Flynn left the United States Attorneys' Office, and AUSA Kyle Reardon took over the case.

As discussed by the Court in a previous opinion in this matter, the superseding indictment was filed on October 10, 2012. Just nine days later, Defendant Johnson filed the pending Motion to Dismiss the indictment. Doc. #78. After the matter was fully briefed, this Court held a hearing on February 12, 2013. At the hearing, the Court expressed concerns about alleged misrepresentations made to Defendant Johnson by AUSA Flynn. An evidentiary hearing was set, whereby AUSA Flynn was to be present so that the Court could determine whether misrepresentations were made by AUSA Flynn to Defendant Johnson regarding his status as a target or subject of the investigation, warranting dismissal of the indictment. See Doc. #124, Reporter's Transcript ("R.T.") pg. 24-42. Prior to the hearing, the Government submitted a supplemental brief, which included a declaration from AUSA Flynn. Doc. #130.

On March 14, 2013, the Court conducted an evidentiary hearing. See Doc. #135. Counsel for Defendant Johnson elicited several pieces of critical testimony from AUSA Flynn during the hearing, including that: (1) Flynn viewed Defendant Johnson as a "cooperative and honest individual," who was essentially a

2

whistleblower within the company and would "potentially be a key witness for the government;" (2) Flynn "viewed [Defendant Johnson] the same way that [he] viewed [another] individual, Matt Mortimer;" and (3) Flynn repeatedly stated he "never intended to charge [Defendant Johnson]," in this case. AUSA Flynn admitted that he did not leave any notes in the case file memorializing his and his colleagues' conclusion that Defendant Johnson should not be prosecuted in this matter.

Defendant Johnson testified that just prior to his grand jury testimony, AUSA Flynn told him "to just tell the truth and everything would be ok." AUSA Flynn testified that he did not recall having a conversation with the Defendant Johnson outside the grand jury room, but agreed that it may have happened. Defendant Johnson further testified that he understood that he would not be prosecuted if he just told the truth in the grand jury room.

AUSA Reardon questioned Defendant Johnson and challenged his credibility by pointing to discrepancies between Defendant Johnson's testimony and a declaration filed with the Motion to Dismiss, including that he did not mention his wife came with him to the grand jury proceeding or that an agent was present with AUSA Flynn outside the grand jury room.

At the conclusion of the hearing, the Court found that there was no prosecutorial misconduct in this case, but ordered further briefing on whether the doctrine of estoppel or selective prosecution applies and whether the prosecutor has an affirmative duty to notify an individual in the event his status changes from witness or subject to target. The supplemental briefs filed by

the parties have been received, read and considered by the Court, along with the entire record in this case.

## II. OPINION

Through its supplemental brief, Defendant Johnson argues, *inter alia*, that fundamental fairness requires dismissal of the indictment. Doc. #137. Since the Government agreed not to prosecute Defendant Johnson and he relied on this agreement to his detriment, the Government must be held to the terms of the agreement. Id. It is the Government's position that there was never an agreement between AUSA Flynn and Defendant Johnson, nor did Defendant Johnson rely on any agreement to his detriment; therefore, the indictment in this case should not be dismissed. Doc. #141.

The parties agree that the traditional doctrine of estoppel is inapplicable in this case, see Doc. #142, and it has not been considered by this Court as a ground for dismissal. The Court agrees with Defendant Johnson that the doctrine of fundamental fairness, instead, applies here.

"[T]he responsibility of federal prosecutors meticulously to fulfill their promises," is well-established. United States v. Hudson, 609 F.2d 1326, 1328 (9th Cir. 1979). When a promise goes unfulfilled, the principles of fundamental fairness authorize the Court to hold the government to its agreement. Indeed, "[f]undamental fairness requires that promises made during plea-bargaining and analogous contexts be respected." Johnson v. Lumpkin, 769 F.2d 630, 633 (9th Cir. 1985) (citing Santobello v. New York, 404 U.S. 257 (1971)) (other citations omitted). Two

conditions must be satisfied in order to find that nonenforcement of an agreement would be fundamentally unfair: "(1) the agent must be authorized to make the promise; and (2) the defendant must rely to his detriment on that promise." Id. (citations omitted); see also United States v. Goodrich, 493 F.2d 390, 393 (9th Cir. 1974) ("[W]hen the prosecution makes a "deal" within its authority and the defendant relies on it in good faith, the court will not let the defendant be prejudiced as a result of that reliance.")

After careful review of the record as well as case law presented by both parties, the Court finds there was an agreement to not prosecute Defendant Johnson in this case. The Court finds Defendant Johnson's testimony credible, even in light of the Government's attempt to discount his recollection of the interaction with AUSA Flynn outside the grand jury room. AUSA Flynn's representation to Defendant Johnson that he should "just tell the truth and everything will be ok," coupled with prior interactions, formed an agreement not to prosecute Defendant Johnson. Cf. United States v. Minnesota Mining and Manufacturing Co., 551 F.2d 1106 (8th Cir. 1977). This agreement is further evidenced by the fact that both AUSA Flynn and Defendant Johnson believed and understood that Defendant Johnson would not be prosecuted in this case. As discussed below, Defendant Johnson relied on this agreement to his detriment, such that it would be fundamentally unfair to allow this case against him to proceed any further.

Minnesota Mining is most analogous to the case at bar. In that case, the Eighth Circuit affirmed the dismissal of an

indictment based on an oral agreement not to prosecute. 551 F.2d 1106. The defendant and the government, however, vigorously disputed the existence or terms of any "representation or agreement foreclosing the prosecution of [the] defendants." Id. at 1108. The district court held an evidentiary hearing regarding the "controverted and ambiguous" unwritten agreement at issue. Id. The defendants presented evidence that an agreement was reached whereby further prosecutions related to criminal activities of defendants and their company would be forgone provided defendants "fully cooperat[ed]" in the remaining investigation of the illegal activities at issue. Id. at 1108-10. The government denied that any promises were made to the defendants shielding them from further prosecution on tax crimes. Id. The district court found the defendants' evidence credible and held that there was indeed an agreement not to prosecute made by the government, the defendants satisfied the terms of the agreement, the government breached the agreement, and the defendants relied on the agreement to their detriment. See id. at 1110-11. As a result, the district court dismissed the indictment. Id.

Here, AUSA Flynn conveyed to Defendant Johnson, outside the grand jury room, that Defendant Johnson would not be prosecuted if he cooperated by "just telling the truth." Certainly this included providing information that would inculpate Defendant Johnson, as AUSA Flynn acknowledged during the evidentiary hearing. Defendant Johnson held up his end of the bargain by testifying and providing information that was incriminating. Cf. Minnesota Mining, 551 F.2d at 1108-10. It is clear that

6

Defendant Johnson relied on the agreement to his detriment. Indeed, Defendant Johnson testified that he expressed concern about getting an attorney prior to the proceeding. See Doc. #135. Had it been clear to Defendant Johnson that prosecution was a possibility, it is reasonable to conclude that his cooperation would have taken on a different form, including the retention of counsel before his grand jury appearance. Id.

Other Ninth Circuit authority supports the finding that fundamental fairness warrants a dismissal of the indictment. In United States v. Hudson, 609 F.2d 1326 (9th Cir. 1979), the court held an investigator that promised the defendant he would not be prosecuted did not have the authority to bind the government, and therefore, no agreement to refrain from prosecution was formed. However, the court noted several cases where an agreement was formed and enforced, which support the Court's conclusion here. Unlike Hudson, AUSA Flynn had the authority to bind the Government, made a promise not to prosecute, and this promise went unfulfilled. Similarly, in United States v. Goodrich, 493 F.2d 390 (9th Cir. 1974), the court held that the government did not breach the terms of the verbal agreement reached between the parties, nor did the defendants "jeopardize themselves or waive any rights in reliance on the prosecution's promise." Again, the court recognized other circumstances under which fundamental fairness would warrant enforcement of a promise, like the case at bar.

It is also significant that AUSA Flynn saw Defendant Johnson in the same light as Mr. Mortimer. Mr. Mortimer was a manager at WECO, just like Defendant Johnson, except that Mr. Mortimer had

7

more authority than Defendant Johnson.  Mr. Mortimer was
represented by counsel during the WECO investigation, and his
attorney had made handwritten notes that AUSA Flynn promised not
to prosecute his client in exchange for his cooperation in the
investigation.  As with Defendant Johnson, AUSA Flynn did not
leave a memorandum memorializing this promise.  However, Mr.
Mortimer was fortunate enough to have the assistance of counsel –
after he brought the promise to AUSA Reardon's attention, the
agreement was confirmed by AUSA Flynn, and as a result, Mr.
Mortimer was not prosecuted.  Since Defendant Johnson was not
represented by counsel prior to the indictment, there was no one
to confirm the existence of the promise, other than AUSA Flynn.
Defendant Johnson should not be subject to prosecution simply
because he was not represented by counsel and AUSA Flynn failed
to memorialize, in writing, this non-prosecution agreement.
Indeed, it is troubling that Defendant Johnson abided by the
agreement, 18 months went by as he relies on this promise, the
Government did not contact him at any time following his grand
jury testimony, then suddenly he was indicted.  If Defendant
Johnson had been represented by counsel, or if AUSA Flynn had
notified AUSA Reardon of his promise not to prosecute Defendant
Johnson, this case would have progressed in a very different
manner, i.e., Defendant Johnson would have never been named as a
defendant.  It is clear to this Court that, just as the
Government honored AUSA Flynn's promise to Mr. Mortimer, it would
have honored its agreement with Defendant Johnson if AUSA Flynn
had somehow made AUSA Reardon aware of the agreement prior to the
indictment being drafted and presented to the grand jury.

The Government expresses concern that a finding for Defendant Johnson in this case will create a precedent that anytime an AUSA attempts to calm a potential witness before the grand jury it will translate into an agreement not to prosecute. Doc. # 141. The Court does not share this concern. This case presents a unique fact pattern in which both the original AUSA assigned to the case and Defendant Johnson understood that Defendant Johnson would not be prosecuted but this understanding was never communicated to the subsequent AUSA who had the responsibility of drafting and presenting the indictment to the grand jury. Other cases are unlikely to present these same circumstances. AUSA Flynn admitted he should have conveyed his intention not to prosecute Defendant Johnson, and as expressed above, the Court has no doubt that this agreement would have been honored.

Finally, dismissal is a remedy that lies well within the Court's discretion. See Minnesota Mining, 551 F.2d at 1111-12. The Court finds the circumstances of this case to be so extraordinary that dismissal is the only appropriate remedy. AUSA Flynn should have left a memo, making clear that Defendant Johnson was never supposed to be indicted. Simply striking Defendant Johnson's grand jury testimony, as the Government suggests, does not go far enough. The Court hereby enforces the promise AUSA Flynn made to Defendant Johnson and orders the indictment dismissed against him.

## III. ORDER

For the reasons set forth above, the superseding indictment filed on October 10, 2012 against Defendant Douglas Arthur

Johnson is dismissed with prejudice.

    IT IS SO ORDERED.

Dated: May 13, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE